## BOARD OF ED. OF CITY OF BARTLESVILLE v. SCHMIDT.

No. 15584—Opinion Filed Sept. 15, 1925.

**Schools and School Districts—Superintendent of Independent District as Agent of Board in Organizing Departments and Assigning Teachers.**

The superintendent of an independent school district is an employe of the board of education, and the agent of the said board, in the general work of organizing the departments and grades and assigning the teachers employed; he is subject to the orders and policy of the board of education, and his acts, in the general scope of his employment, are the acts of the board of education.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Washington County; H. C. Farrell, Judge.

Action by Edna Conway Schmidt against the Board of Education of the City of Bartlesville. Judgment for plaintiff, and defendant appeals. Affirmed.

H. H. Montgomery and S. J. Montgomery, for plaintiff in error.

Leroy J. Burt and Norman Barker, for defendant in error.

Opinion by THREADGILL, C. The appeal in this case involves the question as to whether or not the superintendent of an independent school district is agent of the board of education in the matter of acceptance of the services tendered by a teacher employed by said board to teach

for a specified term in the public school district.

The action grew out of the following undisputed facts: On June 13, 1922, the board of education of the city of Bartlesville employed the defendant in error, by written contract, to teach in the public school of its district for the school year of 1922-23, at $133 per month, with an added bonus of $403 at end of the term for faithful performance of duty, making the sum of $1,600 for the scholastic year of nine months. At the time the contract was made, defendant in error was a single woman, but married June 28, 1922, before the school term opened in September. In July, she went to see Mr. G. B. Cliff, the school superintendent, at his home in Bartlesville, and he informed her that he knew the board of education was opposed to married teachers in the high school, but he would take the matter up with the teachers' committee and try to place her in some other department. Not receiving any further information from the superintendent or the board of education, she came to the school building, and to the office of the superintendent, on Saturday before the opening of school, and tendered her services as a teacher, but the same were not accepted. The superintendent promised to call her if he could find a place for her; she was never called and assigned to teach under the contract. The only excuse for not assigning her as a teacher was that she had married. She tried but failed to get other work during the term of her contract. She brought this action against the board of education to recover damages for breach of contract. After issues joined the cause was tried to a jury and resulted in a verdict and judgment for the plaintiff in the sum of $1,600 and interest at 6 per cent. from May 31, 1923, and defendant, board of education, has appealed to this court by petition in error and casemade, asking for a reversal and new trial.

The question raised by the defendant is connected with and grows out of paragraphs 3 and 4 of the court's instructions to the jury, which were as follows :

"No. 3. You are instructed that the superintendent of schools has general supervision of the schools of the city, and that his actions in refusing to accept the services of the plaintiff at the time plaintiff presented herself at his office, if you find that he did refuse to accept such services, would be binding on the board of education."

"No. 4. You are instructed that the fact that the superintendent told plaintiff when she called at his home that he knew that the board was opposed to having married teachers was not a refusal on the part of the board to accept plaintiff's services. You are further instructed, however, that if you believe from a preponderance of the evidence that plaintiff presented herself at the superintendent's office two days before school started for assignment to work, and was ready and willing to carry out her part of the contract, and offered to perform her contract, and so notified the superintendent, but that the superintendent informed her that he would not assign her to work, and that her services would not be accepted, then that was such a refusal on the part of the board as would relieve her from the necessity of presenting herself on the first day of school."

Defendant contends that the vice of these instructions was in the assumption that the superintendent was the agent of the board of education in the matter of acceptance of the service of the teacher, instead of submitting this question as one of fact for the jury to determine. We cannot agree with this contention, because it is not disputed that the superintendent had general supervision and management of the school system; he was the head of the administration, the employe of the board, and responsible to them in organizing the departments, placing the teachers employed by the board, and putting into practice the orders and policies of the board. This is shown by the evidence of the superintendent himself, as stated by defendant in its brief on pages 15 and 16 in the following language:

"That his duties were supposed to supervise the organization for the city schools; that he worked with the principals in regard to the eligibility of students, in regard to dividing rooms, and the general organization; that the board of education selected their teachers and turned them over to him with their advice, and that he tried to run things to the best of his ability; that the expense of teachers was not one of his duties; that that duty was performed by the board of education."

This witness further testified that the teachers were assigned to their respective places by a teachers' committee, appointed by the board of education, and that this teachers' committee was a part of the board, and as superintendent he carried out the wishes of the committee; that the committee did not assign the plaintiff to a place and in this manner she was left out. He further stated that the board was against having married teachers and especially in the high school.

Section 10418, Comp. St. 1921, provides the manner of employing the superintendent and the teachers of the schools. They are

not officers, but employes. It is held in Farley v. Board of Education of City of Perry, 62 Okla. 181, 162 Pac. 797, that a superintendent is an employe of the board of education to manage the general operation of the school, organization, and work, under the authority and direction of the board. We may also state that the teacher is an employe for the particular work assigned to him or her, and both are responsible to the board of education for the faithful performance of their respective duties, and it would be as unreasonable to say the superintendent was not. the agent of the board of education, in any particular matter committed to his trust or in the general scope of his employment, as to say the teacher was not responsible to the board for the management of the class and teaching the subject is assigned to his trust. The acts of the superintendent, in the general conduct of the school system, are the acts of the board. If the board announced the policy of refusing to allow a married teacher to teach in the school and the superintendent by his acts carries out such policy, his acts are binding on the board of education. It is not disputed that the board of education in the case before us had announced the policy of refusing to allow married teachers to teach in the school and had so informed the superintendent, and when he advised the plaintiff that she could not have work in the high school, and maybe not in any department, and finally left her off of the faculty, his acts were the acts of the board of education, and the facts being undisputed, the court was warranted in assuming that the superintendent was the agent of the board in refusing to accept the services of the plaintiff as a teacher, and there was no error in the instruction given. The judgment of the court should, therefore, be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 35 Cyc. p. 899.