**AGGRESSIVE CARRIERS, INC., Appellant,**

v.

**TRI-STATE MOTOR TRANSIT COMPANY, Appellee.**

**No. 86611.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Feb. 11, 1997.

Rehearing Denied March 25, 1997.

Certiorari Denied June 3, 1997.

Richard J. Borg, Tulsa, for Appellant.

Steven J. Adams and Mary C. Coulson, Gardere & Wynne, L.L.P., Tulsa, for Appellee.

## MEMORANDUM OPINION

GOODMAN, Presiding Judge.

This is an appeal from a Journal Entry of Judgment filed November 3, 1995, entering judgment on behalf of the defendant on a jury verdict in its favor. The sole issue on appeal is whether the trial court erred when it excluded a witness from testifying.

### Facts

On March 14, 1991, a tractor and semitrailer owned by plaintiff Aggressive Carriers (Aggressive) was traveling southbound on a two-lane highway in Rogers County. At the same time, a tractor and semitrailer owned by defendant Tri–State Motor Transit Company (Tri–State) was traveling northbound on the same highway. Tri–State was hauling an oversize load, but was preceded on the highway by an escort vehicle with flags and flashing lights. It is undisputed the Tri–State truck displayed the proper warnings and was traveling on a route previously approved by the Oklahoma Department of Transportation.

Between the two approaching trucks, the highway formed an "s-curve." The two rigs passed each other somewhere on that s-curve. Aggressive's witnesses stated the rigs passed each other on one of the curves, and that Tri–State crossed the center line. This caused Aggressive's driver to take evasive action and, as he did so, he lost control of his rig, which then overturned, causing injury to the driver and damage to the rig and its contents.

Tri–State's witnesses stated the rigs passed on the straight portion of the s-curve, and Tri–State never crossed the center line. The cause of the accident, according to Tri–State, was Aggressive's driver's overreaction and inattentiveness.

It is undisputed two rigs never made contact. The only eyewitness to the accident, other than the drivers of the respective rigs, was one Ms. Dye. Dye was subsequently interviewed by the investigating officer from the nearby town of Talala, and by an Oklahoma highway patrolman. It is undisputed by the parties Dye was listed as a witness on the accident report.[1]

---

1. A complete accident report was not supplied in the record, and we cannot determine if Dye's address was given. However, the investigating officer stated she lived in a house located on the s-curve. There is nothing in the record presented to explain why Aggressive was unable to readily locate the witness for over three years.

Litigation ensued for almost three years. Approximately twenty-five days before trial a pretrial conference order was agreed to by the parties and signed by the trial judge. Dye was not listed as a witness in that order. Aggressive's counsel did not inform the court that a search for Dye was ongoing. Relying on the list of witnesses in the pretrial order, Tri–State did not seek to locate Dye, or obtain her statement.

Eight days before trial, Dye was located by Aggressive. Aggressive notified Tri–State immediately. Tri–State filed an objection the day before trial to Aggressive's use of Dye as either a witness in chief, or as a rebuttal witness. A telephone conference was conducted with the trial judge who sustained Tri–State's objection. At the end of the jury trial, Aggressive again sought permission to allow Dye to testify. An offer of proof was made, which reflected Dye would testify the rigs passed each other on one of the curves, and not on the straightaway, and that Tri–State's rig was over the center line. This directly supported Aggressive's other witnesses' statements, and was directly contrary to the testimony of Tri–State's witnesses. The trial court declined to allow the testimony, deeming it cumulative to that already on the record.

The jury found Aggressive 75 percent negligent. A judgment was therefore entered in favor of Tri–State. The sole issue briefed by the parties is whether Dye should have been allowed to testify. Aggressive argues Dye's testimony was rebuttal in nature and, as such, it was unnecessary to list her as a witness on the pretrial order. Aggressive relies almost exclusively on the holding set out in *Crussel v. Kirk,* 894 P.2d 1116 (Okla. 1995), which directs the trial court to exercise great latitude in allowing rebuttal witnesses to testify.

Tri–State takes the opposite position, contending Dye's testimony is not rebuttal in nature, but that of a witness in chief, and the unexcused failure to list her on the pretrial order, or the failure of Aggressive's counsel to advise the court a search for Dye was ongoing for purposes of using her as a witness, resulted in the proper exclusion of Dye as a witness.

### Standard of Review

■ The trial court is given discretion to allow a rebuttal witness to testify, and the decision not to do so will not be reversed unless there is a clear showing of abuse. *Crussel v. Kirk,* 894 P.2d at 1119–1120; *Swyden v. Killiam,* 531 P.2d 1031 (Okla.1975); *Caughlin v. Sheets,* 206 Okla. 283, 242 P.2d 724 (Okla.1952).

### Enforcement of Pretrial Orders

District Court Rule 5, 12 O.S.1991, ch. 2, app. 1, states:

(K).... If additional witnesses are discovered, opposing counsel shall be notified immediately in writing and furnished their names, addresses and the nature of the testimony. Copies of the additional documents, exhibits, writings, or list of witnesses shall also be mailed to the Clerk of the Court to be filed in the case. No exhibit or witness may be added to the final pretrial order once the same has been prepared and signed and filed by the Court without a showing to the Court that manifest injustice would be created if the party requesting the addition of such evidence or testimony was not permitted to add [to] such final pretrial order.

It is clear the trial court had the power to exclude Dye's testimony unless Aggressive could show a manifest injustice would occur. The trial court has broad authority to enforce its orders. *Short v. Jones,* 613 P.2d 452 (Okla.1980). The question then becomes: Is Dye's testimony truly rebuttal in nature?

### Definition of Rebuttal Witness

■ The supreme court in *Poppy v. Duggan,* 109 Okla. 104, 235 P. 165 (1925), posed the very question at issue today.

The question is, then, what constitutes rebutting evidence? The most satisfactory definition of rebutting evidence that we have been able to find is ... "that evidence which has become relevant or important only as an effect of some evidence introduced by the other side." The function of rebutting evidence is to explain or repel the evidence given by the adverse party.

It is the duty of the plaintiff to present all of his evidence to make out his case in chief before resting, and it is not permissible to permit the plaintiff to introduce a portion of his evidence in chief and then to wait to see what the evidence on the part of the defendant is before introducing the rest of his evidence. The defendant has a right to require the plaintiff to introduce all of his evidence in chief before he should be required to introduce evidence in his defense.

This definition is still valid. *See, Townsend v. Cotten,* 180 Okla. 128, 68 P.2d 790 (1937); *Middlebrook v. Imler, Tenny & Kugler, M.D.'s, Inc.,* 713 P.2d 572 (Okla.1985). "Rebuttal evidence should explain or rebut the evidence introduced by the adverse party, not just bolster the party's case in chief." *Kinkead v. Western Atlas Int'l, Inc.,* 894 P.2d 1123, 1129 (Okla.App.1993) (citing *Wells v. C.M. Mays Lumber Co.,* 754 P.2d 888 (Okla.App.1987)).

### Analysis

■ We agree Dye's testimony would have advanced the theory of recovery advocated by Aggressive, *i.e.,* Tri–State was negligent. As such, it is not rebuttal in nature. There were no evidentiary surprises [2] to either side concerning the versions of what happened [3] on the s-curve that day. Aggressive knew going into trial Tri–State's witnesses would testify the rigs passed on the straightaway. As such, Dye's proffered testimony should have been introduced in Aggressive's case in chief to directly contradict that of Tri–State. Had Tri–State suddenly raised for the first time the defense that the accident occurred in a manner other than that alleged by Aggressive, Dye's testimony may have been construed as rebuttal. This was not the case, however, and the trial court properly

excluded Dye as a witness pursuant to Rule 5.

Aggressive's reliance on *Crussel* is without basis because the witness therein was giving truly rebuttal testimony. The issue in that case was how much latitude to give a rebuttal witness, not, as in this case, whether the testimony was rebuttal in the first place.

### Conclusion

We find no abuse of discretion in the trial court's decision to bar Dye from testifying. Accordingly, we affirm the trial court's Journal Entry of Judgment.

AFFIRMED.

TAYLOR, V.C.J., and REIF, J., concur.

---

**2.** Aggressive claims in its brief it was surprised when the highway patrol trooper's trial testimony differed from that given in a deposition. Aggressive's brief claims the trooper testified in deposition the accident occurred in a curve, but at trial stated the rigs passed on the straightaway. Aggressive claims this "surprise" evidence necessitated a rebuttal witness. We disagree. The transcript reflects the trooper stated in deposition Tri–State's rig did cross the center line, but changed his testimony at trial by stating the

center line was not crossed. The admitted change in testimony pertained only to the issue of whether the center line was crossed, and had nothing to do with the fact question of where in the s-curve the rigs passed.

**3.** In fact, one of Aggressive's two witnesses, the investigating officer, testified he spoke with Dye, but found her information unhelpful.