## Dr. B. F. HUGHES v. JAMES et al.

No. A-10939.   March 3, 1948.
(190 P. 2d 824.)

Sid White, of Oklahoma City, for petitioner.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Warren H. Edwards, Co. Atty., Okla. Co., of Oklahoma City, for respondents.

JONES, J. This is an original action instituted in this court by the petitioner, B. F. Hughes, against Otis James, justice of peace of Oklahoma county, Warren H. Edwards, county attorney of Oklahoma county, and Dick Strain, sheriff of Oklahoma county, styled "Petition in the Nature of Habeas Corpus and for an Ancillary Order in Prohibition", in which the petitioner seeks his release from custody in the common jail of Oklahoma county, where he is allegedly confined by the respondent sheriff, and prays this court to issue a writ of prohibition directed to the respondent justice of peace and county attorney, restraining and prohibiting them from trying the

petitioner upon a criminal complaint allegedly charging the petitioner with committing the crime of obtaining property by means of a bogus check in Oklahoma county.

In the verified petition it is alleged that prior to March 14, 1943, the petitioner was arrested and held prisoner in Cincinnati, Ohio, by officers of the United States of America; that said officers were anxious to indict and prosecute the petitioner upon charges of transporting forged instruments and securities in interstate commerce, but were unable to do so for want of sufficient evidence; that the United States District Attorney at Cincinnati, Ohio, approached the petitioner and advised him that he was wanted in many jurisdictions for prosecution because of his activities in passing forged securities and other instruments; that the said United States District Attorney did advise and inform the petitioner that if he, petitioner, would furnish evidence to support an indictment and conviction in the Federal Court of that jurisdiction, that petitioner would receive as his sole and only punishment five years imprisonment and five years on probation; that under said circumstances and to avoid endless harrassment, petitioner did furnish said evidence, was so indicted and did on the 16th day of March, 1943, enter his plea of guilty to four charges of transporting forged securities in interstate commerce; that thereafter and in accordance with his said agreement, the United States District Attorney did cause the petitioner to be sentenced into the custody of the Attorney General of the United States for a term of five years and did cause the remainder of said sentences to run concurrently, and your petitioner to be placed on probation with reference thereto. In support of this allegation, the petitioner attached to his petition a letter of the Assistant United

States District Attorney which verified the foregoing allegations of fact.

The petition further alleged that the petitioner has served the required portion of said five year sentence and was released on parole for good behavior; that said United States District Attorney undertook to use his good office to save petitioner from further prosecution in any other jurisdiction, and was successful in preventing prosecution of petitioner everywhere except in the State of Oklahoma; that after the release of petitioner on parole from his federal sentence and at the instance of Seminole county in the State of Oklahoma, the petitioner was extradited from the State of Georgia to Seminole county to answer a charge of forgery there pending.

That upon his return to Seminole county, law enforcement officers gathered from all places in the State of Oklahoma where the petitioner was wanted in connection with his activities as a forger, including representatives of Oklahoma county, and one Mr. H. J. Hooper, at whose instance and complaint the warrant had been issued in Oklahoma county for petitioner's arrest.

That it was then and there agreed by and between and among all of said officers that petitioner should plead guilty in the district court of Seminole county to said charge pending, and receive a sentence of two years in the State Penitentiary at McAlester therefor, and that all other pending charges in the State of Oklahoma would be dismissed against the petitioner; that the respondent Warren H. Edwards, county attorney of Oklahoma county, was not present at the conference, but was contacted and advised thereof by the said H. J. Hooper, and acquiesced in the agreement, and agreed to comply by dismissing the prosecution in Oklahoma county.

That thereafter, on December 27, 1946, motivated solely by said agreement as communicated to him, the petitioner did enter his plea of guilty under said charge so pending in said county of Seminole, and did receive a sentence of two years therefor, and did enter the penitentiary at McAlester and commenced the serving of said sentence on December 31, 1946.

That the respondent county attorney of Oklahoma county has caused your petitioner to be transported from the State Penitentiary to the county jail of Oklahoma county, and is holding him in violation of said agreement upon a charge filed by the said Hooper, with said Otis James as committing magistrate.

At the hearing held before this court, proof was offered on behalf of petitioner substantially sustaining the allegations of his petition.

H. J. Hooper, special agent for the retail merchants of Oklahoma City, and Jake Sims, former chief of police of the city of Seminole and now the head of the Bureau of Investigation of the State of Oklahoma, corroborated the evidence of the petitioner pertaining to the meeting at Seminole, and the agreement that if Hughes would plead guilty to the charge pending in Seminole county, that all other charges pending against him in Oklahoma would be dropped and the evidence further showed that all of the charges in Oklahoma were dismissed except the charge in Oklahoma county. The county attorney of Oklahoma county testified that he was not present at the meeting at Seminole referred to by the officers and that he had no recollection of a telephone conversation with Mr. Hooper pertaining to the dismissal of the Hughes case; that when Mr. Hooper talked to him about the matter recently, he stated that he was agreeable to dismiss-

ing the prosecution if permission could be obtained from the merchant who had suffered the loss by reason of the forgery committed by the petitioner; that thereupon the merchant was contacted and he refused to assent to a dismissal of the prosecution against the petitioner, and accordingly the county attorney not having any independent recollection of any agreement made with petitioner, refused to recommend its dismissal to the committing magistrate.

Under the above facts, this court is confronted with the question as to whether the writ of prohibition should issue to prevent further proceedings in the prosecution of petitioner on the charge pending against him before the respondent Otis James. Although the question presented is one of utmost importance in the State of Oklahoma, counsel for the petitioner filed only a one page brief which did not give any material aid to the court in determining the question and the State of Oklahoma did not file any brief at all. Despite this lack of briefs on the question presented, our investigation has shown no lack of authorities pertaining to this question.

It is settled law that the writ of prohibition may not issue to prevent an inferior court from erroneously exercising jurisdiction, but only to prohibit proceedings as to which inferior tribunal is wholly without jurisdiction, or threatens to act in excess of jurisdiction, and the prerogative writ of prohibition should be issued with caution, and only in cases of necessity, and not in a doubtful case. State ex rel. Wester v. Caldwell, 84 Okla. Cr. 334, 181 P. 2d 843.

In 14 Am. Jur. p. 965, it is stated:

"The usual method of dismissing an indictment or stopping a criminal prosecution at common law is by the

entry of a nolle prosequi. The practice originated in the criminal procedure of England. Under that jurisdiction the power of entering a nolle prosequi was lodged exclusively in the attorney general. His power in this regard was entirely untrammeled. In the gradual development of criminal procedure in the United States, this particular right has remained, but not without limitations. Statutory enactments and limitations by the courts in some jurisdictions have stripped him of most of his absolute power in this regard. The consent of the court is now required in many cases before a nolle prosequi can be entered."

In Oklahoma it is provided by statute:

"The court may either of its own motion or upon the application of the county attorney, and the furtherance of justice, order an action or indictment to be dismissed; but in that case the reasons of the dismissal must be set forth in the order, which must be entered upon the minutes." 22 O. S. 1941 § 815.

"The entry of a nolle prosequi is abolished, and the county attorney cannot discontinue or abandon a prosecution for a public offense, except as provided in the last section." 22 O. S. 1941 § 816.

In discussing these statutes this court in the recent case of Perry v. State, 84 Okla. Cr. 211, 181 P. 2d 280, 286, stated:

"A criminal action may not be dismissed except on order of the court, the county attorney not being vested with such authority. 22 O. S. 1941 § 815. However, under the provision of this statute the County Attorney may move that the action be dismissed and since he is the legal representative of the state charged with the responsibility of investigating and prosecuting all public offenses, the trial judge will ordinarily accept his recommendation and dismiss the action.

"In Adams v. State, 21 Okla. Cr. 448, 209 P. 189, 191, it is held: ' "The court may, either of its own motion

or upon the application of the county attorney, and the furtherance of justice, order an action or indictment to be dismissed; but in that case the reasons of the dismissal must be set forth in the order, which must be entered upon the minutes." Rev. Laws 1910, § 6099 [22 O. S. 1941 § 815]. This is a judicial function, made so by statute, that cannot be delegated to the county attorney.'

"In Kerker v. Superior Court, 38 Okla. Cr. 111, 259 P. 146, this court held that a dismissal cannot be made by the County Attorney, but must be made by order of the court."

In the case of Scribner v. State, 9 Okla. Cr. 465, 132 P. 933, 945, Ann. Cas. 1915B, 381, it is stated:

"In states in which a county attorney may enter a nolle prosequi without the consent of the court he may grant immunity by contract without the approval of the court, but he cannot do so in this state. Under our system immunity is a judicial question which must be passed upon and decided alone by the court having jurisdiction to finally try the matters involved in the immunity claimed."

In the case of State v. McDonald, 10 Okla. Cr. 413, 137 P. 362, 363, it is stated:

"Section 6099 of the Revised Statutes is as follows:

" 'The court may either of its own motion or upon the application of the county attorney, and the furtherance of justice, order an action or indictment to be dismissed; but in that case the reasons of the dismissal must be set forth in the order, which must be entered upon the minutes.'

"The effect of this statute is to abolish the common-law right of the prosecuting attorney to nolle prosequi an indictment or information, except with the consent of the court. It goes further, and, under certain conditions, vests the trial judge with the power, whenever in his judgment the interest of justice may require it, to or-

der the dismissal of an indictment or information, with or without the consent of the county attorney. This is the law of Oklahoma, and by it we are bound."

In the case of Faucett v. State, 10 Okla. Cr. 111, 134 P. 839, 841, L. R. A. 1918A, 372, this court stated:

"It is expressly provided by our statute that the court, either upon its own motion or upon the application of the county attorney, and in furtherance of justice, may order the dismissal of any indictment or information against a defendant, and that in such cases the reasons of the dismissal must be set forth in the order, and must be entered upon the minutes. See section 6099, Rev. Laws 1910. Section 6100 [22 O. S. 1941 § 816] takes from the county attorney the common-law right of entering a nolle prosequi in any case, without the consent of the court. Section 6101 provides that although the judge may order a case to be dismissed, that such dismissal is not a bar to any other prosecution for the same offense."

To the same effect see Jones v. Busby, District Judge, 37 Okla. Cr. 68, 256 P. 758; Smallwood v. State, 14 Okla. Cr. 125, 167 P. 1154.

To sustain the contention presented on behalf of defendant would be to nullify the statutes hereinabove quoted and would in effect permit a county attorney to do indirectly that which he is prohibited from doing directly. If the county attorney seeks to make an agreement with the defendant to dismiss a prosecution under the statute, the agreement should be submitted to the court for his approval.

Officers who were present when the conversation was had with the petitioner in Seminole county testified before us and were very insistent that this court enforce the agreement allegedly made with the petitioner. We quite frankly state that the views which they and counsel

for petitioner have expressed have impressed us that justice and fairness to the accused would warrant this court in enforcing this alleged agreement. We do not feel, however, that under the law this court would be justified in issuing the writ of prohibition, which may only be legally issued where there is an absolute lack of jurisdiction in the inferior court. The inferior court has jurisdiction of the subject matter and the question here presented is properly one to be submitted to it for its determination.

If the county attorney is insistent upon proceeding with the prosecution, the accused may present to the magistrate or the district court the question as to whether the agreement with the county attorney was made and seek an order for dismissal of the action. We certainly do not think it fair to one accused of crime for prosecuting officials to secure an unfair advantage by making a purported agreement with them which they are either unable to legally fulfill or which they elect to not fulfill. If an unfair advantage is taken of an accused, then a conviction obtained under such circumstances would not be sustained on appeal.

By reason of the foregoing it is evident that the petitioner has not sustained the burden of showing that he is clearly entitled to the writ of prohibition and his petition is therefore denied.

BAREFOOT, P. J., and BRETT, J., concur.